# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

FERNANDO SANTANA BRUM

Petitioner,

v.

JOSEPH D. MCDONALD, JR.,
Sheriff, Plymouth Sheriff's Office

Respondent.

Civil Action No. 1:25-cv-11624-WGY

## PETITIONER'S REPLY TO RESPONDENT'S RESPONSE TO THE ORDER TO SHOW CAUSE

Petitioner, Fernando Santana Brum, by and through their undersigned counsel, hereby submits this Reply to the Respondent's Response to the Order to Show Cause ("Resp. Response") regarding Petitioner's Petition for Writ of Habeas Corpus *ad Prosequendum* or *ad Testificandum* (the "Petition"). Doc. 1. Mr. Santanta Brum has been continuously residing in the United States since August of 2023. He has a pending claim for asylum and related protection from removal to Brazil before the Department of Justice.

On January 31, 2025, Mr. Santan Brun was arraigned on charges of Indecent Assault and Battery on a Person Over the Age of Fourteen by the Barnstable District Court. He pleaded not guilty to all charges and vigorously contests the allegations against him. If convicted, in addition to criminal penalties, Mr. Sanata Brum would become ineligible for virtually all forms of relief from removal and would be permanently barred from reentry to the United States. If he is unable

to defend himself and his case remains in default, he would also likely be precluded from ever securing a visa to enter the United States again.

Accordingly, Mr. Santana Brum asked both his appointed criminal defense counsel and the officers at Plymouth County House of Correction, where he is detained, to bring him to his District Court hearings in Barnstable. However, it appears that these requests were either not properly made or properly transmitted, Mr. Santanta Brum was not brought to Barnstable District Court, and a default was entered against him. This Petition followed.

Petitioner is not directly challenging Respondent's authority to detain him in this action. Rather, Mr. Santana Brum contends that the conditions of his detention must consider his right to defend himself in state court proceedings. In other words, Mr. Santana Brun is asking that his rights, sounding in the 5th and 6th amendments to the United States Constitution, be honored. Respondent contends that if Mr. Santana Brum follows the procedures outlined in their response and that no “intervening factors” are present that they "anticipate" that they would comply. *See* Resp. Response n.4.

Respondent further contends that if ICE declines to honor any state court request, that Petitioner has no ability to seek further relief from this Court. Citing a recent decision from this District that concerned a Petitioner that was detained by ICE in a facility in New Mexico, Respondent claims that only the District Attorney or prosecuting authority can request his appearance at trial. *Malool v. Castro*, 2025 WL 1424434 at *3 (citing *Barber v. Page*, 390 U.S. 719 (1968) (“in the case of a prospective witness currently in federal custody, 28 U.S.C. sec. 2241(c)(5) gives federal courts the power to issue writs of habeas corpus *ad testificandum* and citing cases where state prosecutors made such requests)”. *See* Resp. Response at 5. But the plain

language of 2241(c)(5) does not impose this limitation on who may petition for the writ and Mr. Santan Brum has a legally cognizable interest in appearing at his own criminal proceedings.

This Court should grant the writ or alternatively hold proceeding in a brief abeyance to permit Respondent to comply with the newly issued state court request for Petitioner's appearance.

## BACKGROUND

### A. Petitioner's Immigration Status

On Friday, January 31, 2025, Petitioner was arraigned in the Barnstable District Court for a charge of Indecent Assault and Battery of a person 14+. *See* Affidavit by Maeve Healy, Esq., Petitioner's Attorney for that charge, Brooks Law Firm ("Healy Aff."), filed with the Petitioner's habeas corpus petition on June 4, 2025, at 1. Petitioner pleaded not guilty, was released on bail, and a pretrial hearing was set for March 10, 2025. *See id.* The following Monday, February 3, 2025, ICE apprehended Petitioner. *See id.* at 2. Petitioner remains in ICE custody to date at Plymouth County Correctional Facility in Plymouth, MA. *See id.* The Barnstable District Court entered a default judgment because ICE failed to present Petitioner to the March 10, 2025 pretrial hearing. *See id.* at 3. Because Petitioner was not afforded an opportunity to defend himself in State Court, he was materially prejudiced by his detention. *See id.* at 5. Petitioner remains in default status in Barnstable District Court to date. *See id.* at 3.

### B. The State Court Habeas Process for ICE Detainees like Petitioner, is arbitrary and Constitutionally Infrim.

The Massachusetts Trial Court, Sheriffs' Departments, and ICE developed a process for ICE to bring detainees to appear in their Massachusetts district court proceedings. *See Habeing Defendants from Immigration Custody to Massachusetts Criminal Courts* dated January 2019

("Habeing Defendants"), attached to Resp. Response as Exhibit A. According to these procedures, it is the defense attorney's responsibility to request the writ [for the defendant's appearance in state court] and inform the court where the defendant/ICE detainee is being held." *See id.* at n.3. After the defense attorney requests that writ, the state district court clerk must issue a state writ of habeas corpus to the Sheriff. *See Habeas Defendants*. Then, ICE must allow the Sheriff to release that defendant, and the Sheriff becomes responsible for transporting that defendant to and from state court. *See id.* To protect its jurisdiction of the defendant, ICE and the Trial Court agreed that such state writs guarantee the state will return the defendant to ICE after the conclusion of the state proceeding. *See id.*

While Respondents reference a set of procedures for securing a detainee's appearance in state court, in practice, ICE takes the position that it has sole discretion as to whether to comply with a request to transport an ICE detainee to a state court proceeding. *See* Resp. Response n.4. ("In the event Petitioner secures a state habe, ICE anticipates that it would follow the procedures outlined in Exhibit B in the absence of any intervening reasons that would prevent it from doing so").

In *Muchiri v. Lechleitner et al., Respondent's Response to Petitioner's Petition for Writ of Habeas Corpus ad Prosequendum or ad Testificandum* ("Muchiri"), that Petitioner was similarly detained by ICE in Plymouth County Correctional Facility in Plymouth, Massachusetts and filed a request to transport him to state court proceedings, which was issued by the Worcester District Court, but ICE declined to transport that Petitioner to several of his state criminal proceedings. Civil Action No. 1:24-40154-WGY (D. Mass. Filed 02/04/2025). In that case, ICE declined to comply with the request because during an earlier transport for the same defendant, the Worcester District Court ordered a nominal bail to ensure that defendant was getting credit for

the time he was held. *Id.* at 8-9 This administrative ruling resulted in the defendant being held in state custody for a few days before ICE took him back into immigration detention. *Id.* at 4. Therefore, ICE believed that the Worcester District Court would not cooperate with returning to the defendant its custody the completion of the criminal proceedings. *Id.* at 7. ICE then explained how it routinely facilities the appearance of detainees in its custody before Massachusetts district courts; yet, it "considers each state habe request individually and on its own merits" and related to a writ of habeas corpus *ad testificandum*, it "considers factors such as the necessity of the requested testimony, whether such testimony could occur remotely via video teleconference technology, the status of removal proceedings against the detainee/defendant, and security risks involved with allowing transfer of the detainee/defendant from ICE custody into state custody." *Id.* at 8. ICE in that case also cited *Greene v. Prunty*, 938 F. Supp. 637, 638 (S.D. Cal. 1996) in its argument that in considering a writ of habeas corpus *ad testificandum*, consideration must be given to "whether an inmate-witness' testimony is relevant…necessary…whether the probative value of the testimony justifies the expense and security risk associated with transporting the inmate-witness to court from a correctional facility." *Id.* at 6.

In addition, ICE has a policy and practice of refusing access to remote hearings for state criminal proceedings at detention centers on a case by case basis. See *Doe v. United States Dep't of Homeland Security*, 2025 U.S. Dist. LEXIS 18000 (W. Dist. Penn, Jan. 31, 2025). In that civil rights action against the Moshannon Valley Detention Center ("MVDC"), that defendant was asked by that court whether it was odd that some plaintiffs were granted access to remote hearings while others were not, and that defendant answered it was not necessarily odd because it was done on a case by case basis. *Id.* That court acknowledged that that defendant had a duty to process immigration matters but that there was no acceptable reason to forego constitutional

rights. *Id.* That defendant argued it lacked the technology to provide all detainees with the opportunity for a remote hearing, but that court was unpersuaded and stated a lack of resources cannot be overcome by an individual's interests in their important constitutional rights. *Id.* Although prisons and detention centers have some latitude, when constitutional violations arise because of the institution's operations, such latitude is overruled. *Id.*

The above cases demonstrate that ICE, in practice, despite the processes outlined in the 2018 and 2019 memoranda, understands it has discretionary authority and may decline to comply with a validly issued request from a state court or refuse to provide the means for a defendant to appear at their trial.

## ARGUMENT

### A. The Petitioner has standing to request the Court to issue a writ of habeas corpus *ad prosequendum* or *ad testificandum* even if a state prosecutor is not a party to the party.

Under Article III of the U.S. Constitution requiring a case or controversy to be at issue, federal court jurisdiction exists when a plaintiff has standing to sue. *Massachusetts v. United States HHS*, 923 F.3d 209, 222 (1st Cir. 2019) (citing Raines v. Burd, 521 U.S. 811, 818 (1997)). To establish standing, at a minimum, the plaintiff must have suffered an "injury in fact." *Capen v. Campell*, 134 F.4th 660, 667 (1st Cir. 2025) (citing *Lujan v. Defs. of Wildlife*, 505 U.S. 555, 560 (1992) (citations omitted)). An injury fact exists when each material element has a definite factual allegation, either direct or inferential. *Id.* (citing *United States v. AVX Corp.*, 962 F.2d 108, 115 (1st Cir. 1992). A plaintiff must also establish causation and redressability. *United States HHS*, 923 F.3d at 227 (citing *Lujan*, 504 U.S. at 561-62). Causation relates to whether the injury is "fairly traceable" to the defendant's action. *Id.* at 227-228 (citing *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010)). Redressability requires that the court, if

granting the plaintiff a favorable decision, will redress the injury. *Massachusetts v. EPA*, 549 U.S. 497, 517 (2007).

In this case, Petitioner has suffered several injuries in fact evidenced by the significant effects of not appearing at his pretrial hearing on March 10, 2025, including, missing the initial court appearance in which defense counsel was appointed, inability to confront those who lodged complaints against him, inability to challenge the evidence brought against him, present evidence establishing their innocence, inability to enter plea negotiations, and overall prolonged detention. These are specific, concrete harms Petitioner was subject to. In addition, the Petitioner's injuries in fact were caused by the Respondent's failure to transport Petitioner to that pretrial hearing. In addition, Mr. Santana Brum faces imminent injury of not being transported to criminal proceedings, because of ICE's claimed discretion to refuse state court writs as well as their now frequent practice of transferring detainees to remote detention facilities. These harms are not speculative but are at the very least, substantially likely to occur. *Reddy v. Foster,* 845 F.3d 493, 500 (1st Cir. 2017).

This Court may provide the appropriate redress to Petitioner's injuries by issuing the writ of habeas corpus *ad prosequendum* requiring Respondent to bring Petitioner to his scheduled pretrial hearing on June 25, 2025 and to subsequent hearings.

Respondent tries to avoid this result by citing a recent decision in this District, M*alool v. Castro* (2025 U.S. Dist. LEXIS 93917 (D. Mass. May 16, 2025). However, that case is inapposite. To the extent that *Malool v. Castro* reads *Barber v. Page* (390 U.S. 719 (1968)) to foreclose a detainee's standing, it is mistaken. In *Barber v. Page*, that Court reasoned that pursuant to 28 U.S.C. sec. 2241(c)(5), a federal court may issue a writ of habeas corpus a*d testificandum* "at the request of state prosecutorial authorities." 390 U.S. at 724. *Malool* cites this

part of *Barber v. Page* and claims that because 28 U.S.C. sec. 2441(c)(5) does not distinguish between writs of habeas corpus *ad testificandum* and *ad prosequendum*, that the requirement of the prosecutor requesting a writ of habeas corpus *ad testificandum* also applies to writs of habeas corpus *ad prosequendum*. *Malool*, 2025 LEXIS 93917 at *7. This is a misplaced application of the case because it fails to consider the plain language of the statute enabling the protections of the writ of habeas corpus, which does not impose such limitations but expressly includes prisoners when "[it] is necessary to bring him into court to testify or for trial." 28 U.S.C.A. § 2241 (West).

In *Carbo v. United States*, the Supreme Court held that the U.S. District Court for the Southern District of California had jurisdiction to issue a writ of habeas corpus *ad prosequendum* directing a NYC prison official to deliver that prisoner in NYC to California for trial in California court. 364 U.S. 611, 612 (1961). The Court granted cert because the administration of criminal justice required it. *Id.* It found it "appropriate and necessary to trace the course followed by congressional action granting judicial power to issue writs of habeas corpus generally." *Id.* at 614. It then summarized how Chief Justice Marshall interpreted the First Judiciary Act in *Ex parte Bollman*, 4 Cranch 75 (1807), defining habeas corpus as a "generic term including many species of writ." *Id.* at 614-615. In its opinion, that Court found differing treatment between the Great Writ, meaning habeas corpus ad subjiciendum", and other writs. *Id.* at 615. As to the other writs, that Court analyzed how Congress has not abandoned the English system as to the *ad prosequendum* writ:

> …that construction by recognition of the continually increasing importance assigned to authorizing extraterritorial process where patently desirable. Cf. Fed. Rules Crim. Proc., 4(c)(2) and 17(e)(1). And it is the more so here where an accommodation is so important between the federal and state authorities. *Hebert v. Louisiana*, 272 U.S. 312, 315-316

> (1926). That comity is necessary between sovereignties in the administration of criminal justice in our federal-state system is given full recognition by affording through the use of the writ both respect and courtesy to the laws of the respective jurisdictions.
>
> *Id.* at 620-621.

Moreover, that Court underscored the importance of the *ad prosequendum* writ, as "necessary as a tool for jurisdictional potency as well as administrative efficiency, extended to the entire country." *Id.* at 618. Based on the history of the *ad prosequendum writ*, it is clearly different from the purposes of the writ of habeas corpus *ad testificandum* as detailed in *Muchiri*.

*Muchiri* demonstrates that the purposes of a writ of habeas corpus *ad testificandum* are different from the function of a writ of habeas corpus *ad prosequendum*. The two writs are similar only in that both, if validly issued, require the custodian, in this case ICE, to bring a detainee to state criminal proceedings. The important difference is that *ad prosequendum* relates to a defendant's right to appear at their own criminal proceedings, confront the witnesses and evidence against him, and potentially reduce their prolonged detention. As such, a*d prosequendum* sounds in a defendant's constitutional rights of the First, Fifth, Sixth, and Fourteenth Amendments. In addition, the *ad prosequendum* writ is supported by the right to defend yourself in criminal court, a right afforded by the Commonwealth of Massachusetts. *See* Mass. R. Crim. P. 18(a) Presence of Defendant ("In any prosecution for crime the defendant shall be entitled to be present at all critical stages of the proceedings") and afforded by federal statute. *See* Fed. R. Crim. P. 43 Defendant's Presence (a) ("When Required. Unless this rule, Rule 5, or Rule 10 provides otherwise, the defendant must be present at: (1) the initial appearance, the initial arraignment, and the plea; (2) every trial stage, including jury impanelment and the return of the verdict; and (3) sentencing").

In contrast, *Malool* cites *Curran v. United States*, 332 F. Supp. 259, 261-62 & n.1 (D. Del. 1971), for the proposition that it is "not desirable" for a writ of habeas corpus *ad testificandum* to be made on behalf of a defendant; however, as Petitioner argues above, criminal defendants have significantly more at stake such as a right to appear at their own criminal proceedings, confront those who lodge complaint(s) against him, confront the evidence brought against him, and reduce factors prolonging detention than someone incarcerated or in detention who wishes to be brought to court as a witness. Although it may not be "desirable" for a defendant to bring a writ of habeas corpus *ad testificandum,* it is nevertheless proper for a defendant to bring a writ of habeas corpus *ad prosequendum*. This further illustrates that applying *Barber v. Page*'s dicta regarding an *ad testificandum* writ to the issue in *Malool* regarding an *ad prosequendum* writ is mistaken. To emphasize again, *ad prosequendum* has a different history and function than does the *ad testificandum writ.* Further, as stated above relating to *Muchiri*, ICE, in practice, believes it has discretionary authority and may decline to comply with a validly issued writ of habeas corpus *ad prosequendum* or *ad testificandum* from a state court.

Therefore, a court should not lightly limit the remedies available to an immigration detainee by applying the holdings in *Malool* and *Barber v. Page* to a distinguishable set of facts. The injuries sustained from an inability to participate in one's own criminal process are very different from the inability to be called as a witness.

In addition, *Malool* concerned a detainee that was housed outside the jurisdiction of this Court which raises issues of personal jurisdiction over the warden with physical custody that are not presented here. 2025 U.S. Dist. LEXIS 93917 at *2; see, *Rumsfeld v. Padilla*, 542 U.S. 426, 435, (2004).

In sum, Mr. Santana Brum not only has standing to bring this writ of habeas corpus *ad prosequendum* to this Honorable Court because of his constitutional and statutory interests in participating in his state criminal proceedings but also to request this writ even if state prosecutorial authorities do not join in the request.

**B. Petitioner's Detention without a reliable process for securing Access to State Court Violates Due Process.**

The United States Supreme Court and First Circuit have held that due process applies to immigrant detention. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001); *Hernandez-Lara v. Lyons*, 10 F.4th 19, 29 (1st Cir. 2021). *Matthews v. Eldridge* provides the relevant factors to weigh when balancing the private and Government's due process interests. 424 U.S. 319, 334-335 (1976). The relevant factors are: "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.*

In regards to the first *Matthews* factor, Mr. Santana Brum's interests are seriously affected by the Respondent's discretionary authority to refuse to comply with certain requests to transfer or transport defendants/ICE detainees to their state criminal proceedings. By Respondent not transferring or transporting Mr. Santana Brum to his state criminal proceedings, a mere 30 miles away from where he is detained, there is no reliable process for Mr. Santana Brum to access state court. Thus, he remains in default status with Barnstable District Court. Further, if he is convicted, in addition to criminal penalties, Mr. Sanata Brum would become ineligible for virtually all forms of relief from removal and would be permanently barred from reentry to the

United States. In other words, if he is unable to defend himself and his case remains in default, he would also likely be precluded from ever securing a visa to enter the United States again. Mr. Santana Brum also seeks refuge and protection in the United States, and he has a pending claim for asylum and related protection from removal to Brazil before the Department of Justice. His interests are not only paramount to defending himself in state criminal court but also to his eligibility for relief from removal, asylum status in the United States, and if those forms of relief are unavailable, then seeking valid entry into the United States at a later time. This is an especially salient interest as Mr. Santana Brum has a US citizen child who will become eligible to petition for his permanent resident status upon turning 21. 8 U.S.C. 1154 et seq.

Regarding the second *Matthews* factor, when ICE follows its case by case practice to either comply or refuse to comply with a request to transfer or transport a defendant/ICE detainee to their state criminal proceedings, such procedure erroneously deprives Mr. Santana Brum of his interests, including appearing at his trial, defending himself, confronting the witnesses and evidence against him, preventing perpetual default status, and the ability to obtain other forms of relief that require that his state criminal charges be resolved. Moreover, there is high probative value in additional or substitute procedural safeguards against arbitrary refusal to transport Mr. Santana Brum or his sudden movement to remote detention centers. A meaningful ability to be informed of and contest these practices are necessary to protect the interests that are afforded by the United States Constitution as well as federal and state statutes.

Finally, regarding the third *Matthews* factor, the Respondent has interests in enforcing United States immigration laws and protecting the public from potential harm. Therefore, Respondent believes it has absolute discretion in fulfilling that mission, even at the expense of constitutional rights and a state court order requiring it to assist in the transfer or transport of

defendants/ICE detainees to their state criminal proceedings. Mr. Santana Brum understands that Respondent has the authority to detain him, but he asserts that Respondent's authority does not mean his constitutional rights may be violated. To be sure, the Respondent has discretion as to how it runs its detention facilities and an interest in ensuring that ICE detainees are returned after state criminal proceedings. However, Respondents also have many avenues for ensuring that their detainees have access to legal process as they are able to secure their appearances at federal immigration proceedings and federal trials on a daily basis. As such, detainees' due process interest in appearing in court is not so burdensome as to be outweighed by ICE's interests in absolute discretion and logistical flexibility.

## CONCLUSION

As Petitioner is in ICE custody in Plymouth, Massachusetts, he hereby respectfully requests that this Honorable Court grant the writ or alternatively hold proceedings in a brief abeyance to permit Respondents to comply with the newly issued state court request for Petitioner's appearance while continuing the notice requirement prior to Petitioner's removal from this District.

*Respectfully submitted,*

/s/Carl Hurvich/s/
Carl Hurvich, Esq.
Brooks Law Firm
10 High Street, Ste. 3
Medford, MA 02155
(617) 245-8090
Carl@BrooksLawFirm.com
MA B.B.O. 698179

*Counsel for Petitioner*

**CERTIFICATE OF SERVICE**

I, Carl Hurvich, do hereby certify that on June 17, 2025, the *Petitioner's Reply to Respondent's Response to the Order to Show Cause* was served on the registered participants as identified on the Notice of Electronic Filing (NEF) through the electronic ECF system and paper copies will be sent to those indicated as non-registered participants.

Respectfully submitted,

Dated: June 17, 2025

/s/Carl Hurvich/s/

Carl Hurvich, Esq.
Brooks Law Firm
10 High Street, Ste. 3
Medford, MA 02155
(617) 245-8090
Carl@BrooksLawFirm.com
M.A. B.B.O. 698179